IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 1:22-CR-00429 |
| | : | |
| v. | : | (Judge Conner) |
| | : | |
| KENNETH CABRERA | : | (Electronically Filed) |

**BRIEF IN SUPPORT OF DEFENDANT'S
SECOND MOTION TO DISMISS THE INDICTMENT**

AND NOW comes the Defendant, Kenneth Cabrera, by and through his counsel, Thomas A. Thornton, Esquire, of the Federal Public Defenders Office, and submits the following in support of his Second Motion to Dismiss the Indictment, as follows:

**I.     PROCEDURAL BACKGROUND**

On December 21, 2022, the Government filed an Indictment against Mr. Cabrera alleging violations of 18 U.S.C. § 922(o) and 26 U.S.C. § 5845(b) (Doc. 11). The Indictment alleges that Mr. Cabrera did "knowingly possess a machinegun and machineguns," that is, five auto sears made by a PSP Trooper, "that were designed and created to convert a semiautomatic pistol into a fully automatic machinegun," that were not registered to him in the National Firearms Registration and Transfer Record. The definition of "machinegun" is found at 26 U.S.C. § 5845(b).

Mr. Cabrera's second motion to dismiss is based on the United States Supreme Court's Holding in *Garland v. Cargill,* 602 U.S. 406 (2024) and *Loper Bright Enterprises v. Raimondo,* 144 S. Ct. 2244 (2024).

## II.  LEGAL ARGUMENT

Mr. Cabrera's case squarely presents the issue of whether the ATF exceeded its authority in determining that an auto sear, otherwise known as a Glock switch, is a "machinegun" under 26 U.S.C. § 5845(b).

> The current iteration of 5845(b) defines a "machinegun" as:
>
> [A]ny weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended for use in converting a weapon into a machine gun and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.  *Id.*

But auto sears as stand-alone aftermarket parts were not always considered to be "machineguns" by the ATF.  In 1981, the ATF abruptly changed course when it decided to define "auto sears" as machine guns. This determination was codified in ATF Rule 81-4:

> The Bureau of Alcohol, Tobacco and Firearms has examined an auto sear known by various trade names including "AR15 Auto Sear," "Drop In Auto Sear," and "Auto Sear II," which consists of a sear mounting body, sear, return spring, and pivot pin. The Bureau finds that the single addition of this auto sear to certain AR15 type semiautomatic rifles, manufactured with M16 internal components already installed, will convert such rifles into machineguns.

2

> The National Firearms Act, 26 U.S.C. 5845(b), defines "machinegun" to include any combination of parts designed and intended for use in converting a weapon to shoot automatically more than one shot, without manual reloading, by a single function of the trigger.
>
> The ATF found that an auto sear known by various trade names including "AR15 Auto Sear," "Drop In Auto Sear," and "Auto Sear II," is a combination of parts designed and intended for use in converting a weapon to shoot automatically more than one shot, without manual reloading, by a single function of the trigger. Consequently, the auto sear is a machinegun as defined by 26 U.S.C. 5845(b).

The ATF definition, ATF Ruling 81-4, does not even require the auto sear to be attached to or possessed with a compatible rifle:

> Because an auto sear can transform certain firearms into machine guns as so defined, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) decided in 1981 to define auto sears as machine guns; this definition does not require the auto sear to be installed or even owned in conjunction with a compatible rifle. ATF Ruling 81-4, 27 C.F.R. § 479.11 (hereinafter Ruling 81-4). . . Ruling 81-4 brought auto sears under the Firearms Act's regulatory scheme, which demands that all machine guns be registered. Before 1981, there were no registration requirements for auto sears; since the 1981 ruling, it is unlawful to possess an unregistered auto sear.

*Roe v. Dettelbach*, 59 F.4th 255, 257 (7th Cir.2023). There is no evidence that Mr. Cabrera owned or possessed a compatible rifle.

Prior to 1986, 26 U.S.C. § 5845(b) regulated: "any combination of parts designed and intended for use in converting a weapon into a machinegun." A *combination of parts was required* prior to 1986, a single part alone was not

3

enough to constitute a machinegun. This was a significant change in the determination of what is and is not a machinegun:

> Machinegun variants of the AR-15 style rifle include an additional component known as an auto sear. The auto sear catches the hammer as it swings backwards, but will release it again once a new cartridge is loaded if the trigger is being held back. P. Sweeney, 1 The Gun Digest Book of the AR-15, p. 38 (2005). An auto sear thus permits a shooter to fire multiple shots while engaging the trigger only once. ATF has accordingly recognized that modifying a semiautomatic rifle or handgun with an auto sear converts it into a machinegun. See ATF Ruling 81-4.

*Cargill,* 602 U.S. at 419, n. 4.

On June 28, 2024, the Supreme Court decided *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). There, the Supreme Court specifically overruled *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984), and has abrogated *Chevron* deference to administrative agencies. In sum, the Administrative Procedure Act (APA) requires courts to exercise their independent judgment in deciding whether an agency has acted within its statutory authority, and courts may now not defer to an agency interpretation of the law simply because a statute is ambiguous or silent, such as regarding auto sears. This requires the Court to exercise independent judgment when evaluating an ambiguous statute, such as the ambiguous statute codified in 26 U.S.C. § 5845(b): "[C]ourts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright,* 144 S. Ct. at 2273. The Supreme

4

Court was especially troubled that *Chevron* deference had allowed regulatory agencies to unpredictably "change course", to the detriment of those it regulates:

> Under *Chevron*, a statutory ambiguity, no matter why it is there, becomes a license authorizing an agency to change positions as much as it likes, with "[u]nexplained inconsistency" being "at most . . . a reason for holding an interpretation to be . . . arbitrary and capricious." *Brand X*, 545 U. S. at 981. But statutory ambiguity, as we have explained, is not a reliable indicator of actual delegation of discretionary authority to agencies. *Chevron* thus allows agencies to change course even when Congress has given them no power to do so. By its sheer breadth, *Chevron* fosters unwarranted instability in the law, leaving those attempting to plan around agency action in an eternal fog of uncertainty.

*Loper Bright,* 144 S. Ct. at 2272. With regard to Mr. Cabrera, the previously available *Chevron* deference gave the ATF license to change positions regarding the classification of auto sears, creating inconsistency and further confusing the statutory ambiguity of 26 U.S.C. § 5845(b). The ATF acted beyond the scope of power given to it by Congress when it reclassified auto sears as "machineguns" in ATF Ruling 81-4.

Congress has been silent on what specifically is or is not a "machinegun." When that silence is coupled with 26 U.S.C. § 5845(b), the result unambiguously indicates that the ATF lacked the authority to reclassify stand-alone auto sears as machine guns. *See, generally, Loper Bright Enterprises*.

A stand-alone auto sear is not a "machinegun" because (1) auto sears were not designed and intended solely and exclusively for use in converting a weapon into a machine gun. And, (2) as applied here, because Mr. Cabrera is charged with

5

possessing unregistered machineguns, when he was only in physical possession of aftermarket auto sears, which are not themselves guns, but *parts*.

A. **The ATF exceeded its statutory authority when it determined that freestanding auto sears are themselves "machineguns" in ATF Ruling 81-4, 27 CFR 179.11.**

    1. <u>**Auto sears are not designed and intended solely and exclusively for use in converting a weapon into a machinegun**</u>.

Curtain rod manufacturer Gaston Glock started manufacturing semi-automatic hand guns in 1982. *See*, [US.Glock.com](US.Glock.com). Auto sears, also known as Glock switches, have been in existence since the 1970s. *See*, [The Return of the Machine Gun](The Return of the Machine Gun) by Alain Stephens and Keegan Hamilton. They were commonly sold as aftermarket accessories for Airsoft guns. *Id*.

Auto sears do not meet the definition of being designed and intended solely and exclusively for use in converting weapons into machineguns, as defined in 26 U.S.C. § 5845(b). Auto sears are commonly marketed as aftermarket accessories for children's Airsoft guns, they are not designed *solely and exclusively* for use in converting gunpowder weapons into machineguns under 26 U.S.C. § 5845(b). As such, auto sears are not "machineguns," and 26 U.S.C. § 5845(b) is an unconstitutional restriction on Mr. Cabrera's ability to possess them without registration.

## 2.  The term "part" as used in 26 U.S.C. § 5845(b) is unconstitutionally void for vagueness.

"The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 1858, 75 L. Ed.2d 903 (1983); *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 2298, 33 L. Ed. 2d 222 (1972). "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned*, 408 U.S. at 108, 92 S. Ct. at 2298. Due process demands that statutes give fair warning as to the conduct that is prohibited. *Id.* A statute, therefore, is void for vagueness if people of ordinary intelligence are forced to guess at the meaning of the statute and differ as to its application. *Smith v. Goguen*, 415 U.S. 566, 574, 94 S. Ct. 1242, 1248, 39 L. Ed. 2d 605 (1974). Here, under 26 U.S.C. § 5845(b), what is a "part" that is sufficient to comprise a "machinegun"? It is not reasonably foreseeable that people of ordinary intelligence would determine that an aftermarket plastic rifle accessory *on its own* could constitute a machinegun as defined by the National Firearms Act.

The current text of 26 U.S.C. § 5845(b) defines machineguns by going through various items that can be considered machineguns. The statute states: "any weapon which shoots, is designed to shoot, or can be readily restored to shoot,

7

automatically more than one shot, without manual reloading, by a single function of the trigger". Mr. Cabrera did not possess anything that people of ordinary intelligence would describe as a firearm, let alone a machinegun. The text goes on to include *pieces of a firearm*: "The term shall also include the *fram*e or *receiver* of any such weapon" (emphasis added). Mr. Cabrera did not possess any frames or receivers. The text then included any *part* or *parts*. The term "machinegun" includes: "any *part* designed and intended *solely and exclusively*. . . , for use in converting a weapon into a machinegun." 26 U.S.C. § 5845(b) *(emphasis added)*. We know from the Indictment that Mr. Cabrera is charged with possession of unregistered machineguns even though Mr. Cabrera only physically possessed aftermarket accessories.

What exactly constitutes a machinegun part? This is an open question. What are the characteristics of a *part* of a machinegun? Can a single bolt, screw, zip tie or paperclip that is used to improvise a Glock switch be deemed a "part" pursuant to 26 U.S.C. § 5845(d)? The statute dictates guilt for "any combination of parts from which a machinegun can be assembled, if such parts are in the possession or under the control of a person." *Id*.  Under this reasoning, a reasonable person would conclude that every household junk drawer probably contains some machinegun parts.

Here, Mr. Cabrera is charged with possession of five unregistered "machineguns" for possessing five aftermarket plastic accessories, *i.e.* Glock

8

switches. Mr. Cabrera is not charged with possession of Glock pistols *affixed* with Glock switches rendering them machineguns capable of continuous firing after pulling the trigger once. Mr. Cabrera is charged with possessing plastic aftermarket accessories that *only when coupled with a certain Glock pistol, can then be used as a machinegun.* See, [The Return of the Machine Gun](#) by Alain Stephens and Keegan Hamilton. On their own, auto sears/Glock switches cannot function as machineguns.

In *Cargill*, the Government argued that if the regulation that classified bump-stocks as machineguns was deemed beyond the scope of the ATF's purview, then § 5845(b) would be rendered useless. The Supreme Court disagreed:

> The presumption against ineffectiveness cannot do the work that ATF and the dissent ask of it. A law is not useless merely because it draws a line more narrowly than one of its conceivable statutory purposes might suggest. Interpreting §5845(b) to exclude semiautomatic rifles equipped with bump stocks comes nowhere close to making it useless. Under our reading, §5845(b) still regulates all traditional machineguns. The fact that it does not capture other weapons capable of a high rate of fire plainly does not render the law useless.

*Cargill*, 602 U.S. at 427.

Prior to 1981, the ATF did not classify auto sears as "traditional machineguns". In the same way, interpreting §5845(b) more narrowly to exclude stand-alone auto sears comes nowhere close to making it useless because §5845(b) would still regulate all *traditional* machineguns, *i.e.*, machine guns as defined by

9

26 U.S.C. § 5845(b) prior to 1986 were: "any combination of parts designed and intended for use in converting a weapon into a machinegun. . ." Prior to the change in the statute in 1986, a single part alone was insufficient to constitute a machinegun. A *combination of parts was required*. Mr. Cabrera is charged with unregistered possession of individual Glock switches and not other parts for a machinegun. Mr. Cabrera did not possess any other parts designed and intended for use in converting a weapon into a machinegun. He did not possess any actual firearms.

    Here, the ATF exceeded its authority when it (1) erroneously determined that auto sears are machineguns, as they are not designed *solely and exclusively* for use in converting weapons into machineguns under 26 U.S.C. § 5845(b) in 1986, and when it (2) abruptly changed its classification of auto sears, modifying the definition of machineguns from one that required more than one part used in combination with other parts, to make *a single stand-alone part* a machinegun in 1981 in ATF Ruling 81-4.

## III.  CONCLUSION

Based on the foregoing, Mr. Cabrera respectfully submits that this Court should grant his Second Motion to Dismiss.  The ATF exceeded its authority when it reclassified stand-alone auto sears as "machineguns" and is no longer to be afforded any *Chevron* deference.  Accordingly, the Court should dismiss Counts 1 and 2 of the Indictment under Rule 12(b) for failure to state an offense.

Respectfully submitted,

Date:  December 4, 2024

*/s/ Thomas A. Thornton*
Thomas A. Thornton, Esquire
Attorney ID# 44208
Federal Public Defender's Office
100 Chestnut Street, 3rd Fl.
Harrisburg, PA  17101
Tel. No. 717-782-2237
Fax No. 717-782-3881
*thomas_thornton@fd.org*
*Attorney for Kenneth Cabrera*

# **CERTIFICATE OF SERVICE**

I, Thomas A. Thornton, Esquire, of the Federal Public Defender's Office, do hereby certify that I served a copy of the foregoing **Defendant's Brief in Support of Second Motion to Dismiss the Indictment** via Electronic Case Filing, or by placing a copy in the United States mail, first class in Harrisburg, Pennsylvania, addressed to the following:

>K. WESLEY MISHOE, ESQUIRE
>United States Attorney's Office
>*kenneth.mishoe@usdoj.gov*
>
>KENNETH CABRERA

Date:  December 4, 2024

*/s/ Thomas A. Thornton*
Thomas A. Thornton, Esquire
Attorney ID# 44208
Federal Public Defender's Office
100 Chestnut Street, 3rd Fl.
Harrisburg, PA  17101
Tel. No. 717-782-2237
Fax No. 717-782-3881
*thomas_thornton@fd.org*
*Attorney for Kenneth Cabrera*